[PHILADELPHIA, FEBRUARY 20, 1841.]

## PENINGTON *against* COATS.

### CASE STATED.

In 1828 T. C. granted a lot of ground to J. R. in fee, reserving an annual ground-rent to himself, his heirs and assigns. In April, 1829, he made his will, whereby he devised the said ground-rent to his wife for life, with remainder to or in trust for his five children in different shares and proportions, giving one-eighth part to his son, T. C., Jr. In November, 1829, the lot of ground, with an unfinished building upon it, was sold at sheriff's sale, subject to the ground-rent, and was purchased for T. C. by his son T. C., Jr. On the 19th of March, 1830, T. C. died, without any deed having been made to him by the sheriff. *Held*, that the ground-rent did not merge in the equitable estate acquired by T. C. at the sheriff's sale.

THIS was an action of assumpsit for use and occupation, brought by Henry Penington against Thomas Coats to December Term, 1839, of this court.

| 6wh277 |
| 188 389 |

6 Wh 277
f 33 SC    9

By agreement, the following case was stated for the opinion of. the court, to be considered as if the facts had been found by the jury in the nature of a special verdict.

" Thomas Coats the elder, of the county of Philadelphia, now deceased, was in his lifetime seized in fee of and in a certain lot or piece of ground, situate on the south side of Noble street, at the distance of seventy-three feet one inch eastward from the south-east corner of said Noble street and Delaware Seventh street, in the District of Spring Garden, in the county of Philadelphia, containing in front or breadth on the said Noble street thirty-two feet one inch and a half; thence extending southward along the line of ground now or late of Thomas Coats sixty-eight feet ten inches and three-fourth parts of an inch; thence eastward by ground of James Laws thirty-two feet; thence northward two feet; thence by Jonathan P. Smith's ground eastward seventeen feet; thence northward parallel with John street thirty feet six inches; thence westward by ground of Biddle Reeves seventeen feet; thence northward by said ground of Biddle Reeves forty feet ten inches and a quarter to the south side of Noble street; thence westward along the said Noble street thirty-two feet one inch and a half to the place of beginning: and being so seized, did, on the 23d day of September, 1828, grant the same unto Joseph Rue, his heirs and assigns, forever, subject to a yearly rent of $72 28, payable to the said grantor, his heirs and assigns, forever. And the said grantor afterwards, on the 14th day of April, 1829, made his last will, whereby he devised the said yearly rent, *inter alia*, to his wife, for life, and after her decease one undivided fourth part to Robert A. Parrish, in trust for the testator's daughter Marcy Field and her children; one other undivided fourth part to testator's son-in-law, Jedediah Strong, and daughter, Sarah Strong, for their lives, and after their decease to their children; one other undivided fourth part to testator's son-in-law, Benjamin E. Carpenter, and daughter Deborah P. Carpenter, for their lives, and afterwards to their children; one undivided eighth part unto testator's son, Thomas Coats, his heirs and assigns; and the remaining eighth to his said son Thomas, and Mary his wife, during their lives, and after their death to their children.

That the said Mary Coats, widow of the testator, released to the said devisees in remainder, for the uses and purposes of said will, all her estate for life, and all right and interest which she acquired by the said will, whereby the said devisees next in remainder, are entitled to the present possession of the ground-rent aforesaid, reserved by the deed to the said Joseph Rue, if the same be not merged by act of law. That the said Joseph Rue entered on the said premises under the said conveyance to him, and erected a brick house thereon, but had not completed the same when the premises were seized and

sold by the sheriff of the city and county of Philadelphia, subject to the said ground-rent, and bought by the said Thomas the son; and the said Thomas the son subscribed an agreement for the purchase thereof with the sheriff in the following manner: "Thomas Coats per Thomas Coats, Jr." That a deed was made by George Rees, sheriff, for the said premises, to Thomas Coats, Jr., bearing date April 10th, 1830, and acknowledged on the 12th of the same month in open court, according to law; a copy of which is herewith annexed, marked (A.) That the said Thomas Coats, the elder, died on the 19th of March, A. D., 1830, at his domicile in the county of Philadelphia, leaving issue the said Thomas Coats, Jr., Sarah Strong, wife of Jedediah Strong, Deborah P. Carpenter, wife of Benjamin E. Carpenter, all of whom are now living, and Marcy Field, wife of Joseph Field, which said Marcy hath since died, leaving four children to survive her, namely, Thomas C. Field, Mary Field, John Field, and Joseph Field, now living. That the said Thomas Coats, Jr., on or about the 27th day of May, A. D., 1836, entered into and has continued to occupy the aforesaid premises ever since.

That on the 27th day of May, A. D., 1836, the said Thomas Coats, Jr., made and delivered the indenture granting the aforesaid premises unto Henry Penington, Esq. in trust, a copy whereof is annexed, marked (B.) That the yearly value of the use and occupation of the said premises by the said Thomas Coats, Jr., is two hundred and twenty-five dollars; and that the said Thomas hath occupied the same from the date of the said deed of trust, viz., May 27, 1836, which, until the 27th of November last, is three years and six months, amounting to seven hundred and eighty-seven dollars and fifty cents.

Now if the court shall be of opinion that the title to the whole of the said premises, free, clear and discharged from the said ground-rent of $72 28, was vested in the children of the said Thomas the father at the time of the execution of the said deed of trust to the plaintiff, then judgment shall be rendered in favour of the said plaintiff, trustee aforesaid, for the sum of five hundred and ninety dollars and sixty-three cents, the same being the amount of the yearly value of the premises from the time the plaintiff's title accrued until the 27th of November last, less one-fourth belonging to the said defendant; but if the court shall be of opinion that the title to the said premises was vested in the said children at the date of the said last mentioned deed, subject to the said ground-rent of $72 28 per annum, then judgment shall be rendered in favour of said plaintiff, trustee as aforesaid, for the sum of four hundred dollars and eighty-nine cents, the whole yearly value, less the arrears of the said ground-rent three years and six months, and less one-fourth belonging to the said defendant."

The entry of the sheriff's deed referred to in the case stated, was as follows.

(Penington *v.* Coats.)

"On the twelfth day of June, A. D., 1830, George Rees, Esquire, high sheriff of the city and county of Philadelphia, acknowledged in open District Court for said city and county a deed poll, under his hand and seal, bearing date the tenth day of April, A. D., 1830, for conveying unto Thomas Coats, Jr., his heirs and assigns, in consideration of the sum of eleven hundred and twenty-five dollars, to wit : A certain lot or piece of ground, situate on the south side of Noble street, at the distance of seventy-three feet one inch eastward from the south-east corner of said Noble street and Delaware Seventh street, in the District of Spring Garden, in the County of Philadelphia, containing in front or breadth on the said Noble street thirty-two feet one inch and a half, thence extending southward along the line of ground now or late of Thomas Coats sixty-eight feet ten inches and three-fourth parts of an inch ; thence eastward by ground of James Laws thirty-two feet ; thence northward two feet ; thence by Jonathan P. Smith's ground eastward seventeen feet ; thence northward parallel with John street thirty feet six inches ; thence westward by ground of Biddle Reeves seventeen feet ; thence northward by said ground of Biddle Reeves forty feet ten inches and a quarter to the south side of Noble street ; thence westward along the said Noble street thirty-two feet one inch and a half to the place of beginning ; subject to the payment of a yearly rent charge of seventy-two dollars twenty-eight cents, in half-yearly payments, on the first days of July and January in every year, forever, without any deduction for taxes, to Thomas Coats, his heirs and assigns, forever ; being the same lot of ground which Thomas Coats and Mary his wife, by indenture bearing date the twenty-third day of September, A. D., 1828, granted to Joseph Rue, in fee simple, on which is erected a two-story brick house, nineteen feet front by thirty-one feet in depth, with a piazza, a two-story brick kitchen and bath house ; on the remaining part of the lot the cellar for a house is dug and walled, and the second floor of joists is laid ; and the said sheriff, by a certain writ of *venditioni exponas*, tested at Philadelphia the twelfth day of September, A. D., 1829, did, on Wednesday the twenty-fifth day of November last past, (1829) at seven o'clock in the evening, at the Merchant's Coffee House, in the city of Philadelphia, expose the premises above described, *inter alia*, to sale by public vendue or outcry, when Thomas Coats, Jr., of the Northern Liberties, of the city of Philadelphia, bought the same for the price or sum of eleven hundred and twenty-five dollars, he being the highest and best bidder, and that the best price bidden for the same : to have and to hold all and singular the hereditaments and premises hereby granted and described, or mentioned and intended so to be, with the appurtenances, unto the said Thomas Coats, Jr., his heirs and assigns, to and for the only proper use and behoof of the said Thomas Coats, his heirs and assigns, forever ; under and subject nevertheless to the payment of the above-mentioned yearly rent

charge of seventy-two dollars twenty-eight cents, according to the form, force and effect of the laws and usages of this commonwealth, in such case made and provided."

The conveyance from Thomas Coats, Junr. to Henry Penington referred to in the case stated, recited that, " whereas George Rees, Esquire, high sheriff of the city and county of Philadelphia, by deed poll, bearing date the tenth day of April, one thousand eight hundred and thirty, granted and conveyed unto the said Thomas Coats, by the name and addition of Thomas Coats, Junior, and to his heirs and assigns, all that certain two-story brick messuage or tenement, piazza and kitchen, and lot or piece of ground, situate on the south side of Noble street, at the distance of seventy-three feet one inch eastward from the south-east corner of said Noble street and Delaware Seventh street, in the district of Spring Garden, in the county of Philadelphia, containing in front or breadth on the said Noble street thirty-two feet one inch and a half; thence extending south-ward along the line of ground now or late of Thomas Coats sixty-eight feet ten inches and three-fourth parts of an inch; thence east-ward by ground of James Laws thirty-two feet; thence northward two feet; thence by Jonathan P. Smith's ground eastward seventeen feet; thence northward parallel with John street thirty feet six inches; thence westward by ground of Biddle Reeves seventeen feet; thence northward by said ground of Biddle Reeves forty feet ten inches and a quarter to the south side of Noble street; thence westward along the said Noble street thirty-two feet one inch and a half to the place of beginning: together with the appurtenances, to hold to him the said Thomas Coats, his heirs and assigns, forever; under and subject to the payment of a yearly ground-rent of seventy-two dollars twenty-eight cents, in half-yearly payments, on the first day of July and January in every year, forever, without any deduction for taxes, to Thomas Coats, the father of the above-named Thomas Coats, party hereto, his heirs and assigns, forever, as in and by the said recited deed poll, entered among the records of the District Court for the city and county of Philadelphia, in Book E. page 469, &c., relation being thereto had will more fully and at large appear. And whereas the said premises were purchased by the said Thomas Coats, party hereto, for his father, Thomas Coats, and the consideration money therefor paid by the said Thomas Coats, the father, and the above recited deed poll erroneously made by the said George Rees, sheriff aforesaid, to the said Thomas Coats, party hereto, in place of the said Thomas Coats, the father; by reason whereof the said Thomas Coats, party hereto, became the trustee of his father the said Thomas Coats, and the said yearly ground-rent of seventy-two dollars twenty-eight cents thereby became merged in the equit-able interest of the said Thomas Coats, the father, in said premises. And whereas the said Thomas Coats, the father, being so seised of

or entitled to the said premises, departed this life intestate with respect to the same, leaving a widow named Mary, and issue four children, to wit, the said Thomas Coats, party hereto, and Sarah Strong, wife of Jedediah Strong, Marcy Field, wife of Joseph Field, and Deborah P. Carpenter, wife of Benjamin E. Carpenter, who thereupon became entitled to the said premises, according to law. And whereas the said Thomas Coats, party hereto, Jedediah Strong and Benjamin E. Carpenter, did, on the first day of July, one thousand eight hundred and thirty-three, refer all matters in variance and controversy between them in any way connected with or growing out of the concerns of the estate of the said Thomas Coats, deceased, to the final decision and award of Joseph R. Ingersoll, George M. Dallas and John Bouvier, Esquires, who, on the twenty-fifth day of August, one thousand eight hundred and thirty-four, did award that the said Thomas Coats, party hereto, should convey the premises above described clear of all incumbrances, unto the said Henry Penington, his heirs and assigns, in trust, for the purposes hereinafter mentioned."

The deed then conveyed the said messuage and lot of ground to Henry Penington, his heirs and assigns, in trust to pay the net rents, &c. to the said Thomas Coats, Sarah Strong, Marcy Field and Deborah Carpenter, in equal shares, and to sell and convey the premises to such persons as they should direct and approve, &c.

Mr. *Penington* cited *Helmbold* v. *Man*, (4 *Wharton's Reports*, 421.)

Mr. *Markland*, contra.

Rogers, J., delivered the opinion of the Court.

, A merger is a common law doctrine, and exists where there is a union of the legal estate in one person, in the same right and at the same time. Where such legal ownership of the term and inheritance meets, the term which was before personal property, falls into the inheritance and ceases to exist. But, in no instance, can the legal estate merge in the equitable ownership. In the sixth chapter of Mr. *Preston's Treatise on Conveyancing,* which contains an enumeration of the circumstances, which must concur in order to accomplish the operation of the law of merger, it is said, the several estates must be held in the same legal right: and in page 566, "the exception to merger arising from the circumstances, that the same person takes in different rights, must also be attended by the circumstance, that both these rights are recognized by law and considered to be distinct. And as a legal estate cannot merge in an equitable one, it is matter of consideration, whether the term be not legal, and the inheritance equitable and *e converso.*" Here the ground-rent was a legal estate, and recognized as such at law; but the character of

estate, in which it is said to be merged, is of a different description; being nothing more than an inceptive title, an equitable interest, which, on payment of the purchase-money, would enable the vendor to demand a legal title by a deed properly executed and acknowledged by the sheriff. *Scott* v. *Greenough*, (7 *Serg. & Rawle*, 200.) *Stoever* v. *Rice*, (3 *Wharton's Reports*, 24.) *Morrison* v. *Wurtz*, (7 *Watts*, 437.) These principles have a direct application to the point raised in the case stated, and show, that at law the ground-rent is not merged. At the time of the death of the testator, the estate being separate and distinct, the acquisition of the inceptive equitable title could not operate by merger, as a revocation, *pro tanto*, of the bequests specified in the will. The interest of the legatees having become vested, nothing which has occurred since, can, by any possibility, alter the dispositions in the will, even ˜on the supposition, (which is contrary to the fact,) that the legal estate had been subsequently acquired. And if this be so at law, much less will it be considered a merger in equity; for equity does not favour mergers; and in law, mergers are said to be odious. It is generally, though not universally true, that merger depends on intention; and it is only, in those cases, where it is perfectly indifferent to the party in whom the interests have united, whether the charge or term should not subsist, that in equity the term is merged. 3 *Prest. on Con.* 43. *Forbes* v. *Moffit*, (18 *Ves.* 394.) *Dougherty* v. *Jacob*, (5 *Watts*, 458.) The presumption undoubtedly is against any intention on the part of the testator, by the purchase, to defeat the bequests in his will; nor can it be said to be indifferent even to him, that this effect which certainly never entered into his mind, should be produced. Equity will not permit the rights of creditors, legatees, devisees, husbands or wives, to be defeated by mere act of law, without any act done by them; and in a case cited in *Salkeld*, it is said to be a reason by Lord Chief Justice HOLT, that there should not be an extinguishment, because a third person was concerned, who might be prejudiced; which could not be by act of law, *Prest. on Con.* 292, and to the same effect, *Forbes* v. *Moffit*, (19 *Ves.* 394) ; *Moore* v. *Harrisburg Bank*, (8 *Watts*, 148.)

In *Morrison* v. *Wurtz* it is said, that a sheriff's sale is attended by the ordinary incidents of a sale by an individual: and if this had been a private sale, by articles of agreement, no money paid, nor possession taken, a legal title to be made, and the contract to be consummated at a time fixed by the parties, and in the intermediate time the testator had died, it would be clear, that the case would not fall within the operation of the law of merger. It would not merge at the time of the agreement, and there can be no intermediate time; for until the time agreed upon, the ground landlord would be entitled to his rent, which is inconsistent with the notion that the rent is extinguished: and until the sheriff's deed in the case, in law, he is the owner of the rent.

(Penington *v.* Coats.)

It is not intended to say, that although an estate may not merge at law, that in all cases, it will be left separate and distinct in equity. Cases may possibly occur, where this may not be the case. For where an owner has an absolute interest in the estate and in a charge or term, the latter may be annihilated, and particularly in Pennsylvania, where equitable estates have many of the incidents, as to remedies, of legal estates. As for example, where a lessee purchases the fee, but neglects to take a conveyance of the legal title. Under such circumstances, perhaps the term would be extinguished, as the estates would be inconsistent with each other, and to keep them separate, would be to no purpose. Then, it may be, the maxim would apply, *nemo potest esse dominus et tenems.* But be this as it may, we are all of the opinion, that neither at law, nor equity, has the ground-rent merged so as to defeat the rights of the legatees.

Judgment for $400 and 89 cents.