Naffah, Appellant, *v.* City Deposit Bank et al.

Argued October 8, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Con. F. McGregor*, with him *H. Stewart Dunn*, of *Bechman, Dunn, Parker & McGregor*, for appellant.

*Charles Denby*, with him *Reed, Smith, Shaw & Mc-Clay*, for appellees.

OPINION BY MR. JUSTICE STERN, November 24, 1941:

It is unnecessary to recite in detail the extraordinarily complicated facts of which this litigation is the outgrowth. A brief statement will suffice. Plaintiff was the owner of three adjoining tracts of land in the City of Pittsburgh, the title to which was in his wife's name. In order to secure loans of considerable sums made to him by the City Deposit Bank, four mortgages of $50,000 each were successively executed and delivered to the bank, all of them becoming liens on one of the tracts (tract "A"), the second, third and fourth mortgages on another tract (tract "B"), and only the fourth mortgage on the third tract (tract "C"). Plaintiff undertook the construction on tract "C" of a large apartment building known as the El Tower Hotel, but lacked resources to finance this building to its completion, so that there arose unpaid obligations to contractors and subcontractors amounting approximately to $185,000. Negotiations between these creditors, plaintiff and the bank resulted in an agreement by which plaintiff and his wife gave to a committee of the creditors a mortgage on the El Tower property (embracing tracts "B" and "C") for approximately $285,000, which covered the indebtedness to the creditors and also an additional sum of $100,000 representing a new loan in that amount made by the bank to the creditors' committee as security for which the mortgage of $285,000 and all the claims of the creditors were assigned to the bank. Subsequently plaintiff and his

wife conveyed the El Tower property to Messrs. Diebold, Moss, Bartley, and White, constituting the creditors' committee, subject to the mortgage liens thereon. The situation did not work out, and several years later the creditors' committee deeded the property, subject to the mortgages, to a vice-president of the bank acting as its nominee, the bank agreeing to release the committee from liability for repayment of its loan. The bank had shortly before assigned the fourth mortgage, which was a first lien on tract "C", to The Union Trust Company, to be held in trust for the bank. Then the bank foreclosed the junior mortgage of $285,000 against the El Tower property, became the purchaser at sheriff's sale, and had the sheriff's deed made to Beacon Hotel Corporation, all the stock of which was held by its nominees. Subsequently the fourth mortgage was re-assigned by The Union Trust Company to the bank, and the latter, under an agreement which it had entered into with Beacon Hotel Corporation, satisfied of record this mortgage and the accompanying bond, and gave credit to plaintiff for the balance due on the mortgage at the time of the foreclosure. Shortly thereafter the bank foreclosed the three other $50,000 mortgages and bid in the property (tract "A") at the sale.

Although still heavily indebted to the bank on account of his loans, plaintiff, in conjunction with his wife, has brought various actions against the bank (on one occasion in the name of M. R. Wildman, to whom plaintiff and his wife had assigned their interests, but who, as the chancellor found, acted as the agent of plaintiff), the object being to stay foreclosures, strike off or open judgments, obtain a right of subrogation, or accomplish some similar purpose. All of these suits were either withdrawn or decided against plaintiff; during their course (according to a finding of the chancellor) plaintiff employed numerous lawyers and consulted fifteen others; in the present proceedings plaintiff himself, without the assistance of counsel, prepared the bill of complaint and the

requests for findings of fact and conclusions of law.* In view of these significant facts and the lack of merit in plaintiff's complaints, we heartily endorse the suggestion made by the chancellor that an end should be brought to this futile litigation.

The present proceeding is by a bill of complaint asking credit for the mortgages on tract "B", for an additional credit on the fourth mortgage satisfied by the bank, and for an accounting. The theory of plaintiff seems to be that, when the bank took title to the El Tower property from the creditors' committee, it did so under and subject to the then existing mortgages, and thereby became liable for the payment of these mortgages to itself. This result is alleged to have happened because of the implied covenant of a grantee who purchases property under and subject to a mortgage to indemnify his grantor against the latter's personal liability in respect thereto, the amount of the mortgage having presumably been deducted from the purchase price. This familiar doctrine is obviously not applicable to the transaction in the present case. The covenant of indemnity upon which it rests is one between grantor and grantee for the protection of the former: *Moore's Appeal*, 88 Pa. 450. The grantor cannot recover on the covenant unless he proves actual loss: *Faulkner v. McHenry*, 235 Pa. 298, 83 A. 827. The "under and subject" clause gives no right to any person in the line of title to enforce it other than the grantor against his grantee: *Fair Oaks Building and Loan Association v. Kahler*, 320 Pa. 245, 251, 181 A. 779, 781. Only the creditors' committee, therefore, which conveyed the property to the bank, would, if any one, have the right to invoke the covenant as against the bank; as between plaintiff and the bank the covenant has no application. As far as the foreclosure by the bank of the mortgage on the El Tower property is con-

---

* We are informed that counsel for appellant have withdrawn from the case following the oral argument.

cerned, the ownership of the property was then already in the bank, and no implied covenant of indemnity as between grantor and grantee could arise. Plaintiff also takes the position that when the bank acquired title to the property there automatically resulted a merger and consequently an extinction of the mortgages. Merger is a question of intention, and, where the mortgagee's intention is not to merge, the mortgage will be kept alive, nor will a merger be presumed to take place when, as obviously here, it would be against the interest of the mortgagee: *Moats v. Thompson,* 283 Pa. 313, 321, 129 A. 105, 108; *Sheehan Building & Loan Association v. Scanlon,* 310 Pa. 6, 9, 10, 164 A. 722, 723; *Sparrow v. Mowers,* 315 Pa. 460, 463, 173 A. 273, 274; *Fair Oaks Building & Loan Association v. Kahler,* 320 Pa. 245, 249, 181 A. 779, 780; *Musselman v. Sharswood Building & Loan Association,* 323 Pa. 550, 557, 187 A. 419, 421.

The fourth mortgage was satisfied by the bank, and credit for the amount due on it given to plaintiff, apparently, as the chancellor found, "in some respects" as "a gratuity." Plaintiff, however, looking this gift horse in the mouth, makes the astounding claim that, since the mortgage constituted a lien of $50,000 on each of three tracts, the bank, when satisfying it, should have given plaintiff a credit of $150,000.

With respect to plaintiff's demand for an accounting, it appears that the bank did file two accounts covering the entire period during which there was any obligation on its part to account as a mortgagee in possession of the premises; after the last of the foreclosures plaintiff had no interest in the premises and no further accounting was due. To the first of these accounts exceptions were filed and dismissed; to the second, no exceptions were ever filed.

The chancellor found that "The claims made by the plaintiff in his bill of complaint are res adjudicata by reason of prior proceedings between the same parties, or their representatives, or nominees in this court." There

is ample justification for this finding because all the matters which are the subject of the present bill were covered in previous actions, notably in that instituted by Wildman, who was the agent of plaintiff; by the result of those proceedings, therefore, plaintiff is concluded: *U. S. National Bank of Portland v. Union National Bank of Philadelphia*, 268 Pa. 147, 157, 110 A. 792, 794; *Maguire v. Wheeler*, 317 Pa. 193, 196, 176 A. 441, 442; *Souffrant v. Compagnie des Sucreries*, 217 U. S. 475, 486, 487.

The decree is affirmed at the cost of appellant.